UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAO ARLINDO ORNELAS DEBARROS,

      Plaintiff,               Case No. 2:19-cv-10071
                                  Hon. Victoria A. Roberts
                                  Mag. Judge: Anthony P. Patti

GENERAL MOTORS, LLC,

      Defendant.

                                                        /

| | |
|---|---|
| Edward L. Ewald, Jr. (P43751) <br> LEMON LAW GROUP PARTNERS, PLC <br> Attorneys for Plaintiff <br> 48660 Pontiac Trail, #930792 <br> Wixom, MI 48393 <br> (313) 510-3329 <br> Fax (248) 856-2247 <br> edwardewald@comcast.net | Daniel J. LaCombe (P38602) <br> BARRIS, SOTT, DENN, DRIKER, PLLC <br> Co-Counsel for Defendant <br> 333 W Fort Street, Ste 1200 <br> Detroit, MI 48226 <br> (313) 965-9725 <br> Fax (313) 965-2493 <br> dlacome@bsdd.com |
| | Kathleen Taylor Sooy <br> April N. Ross <br> CROWELL & MORNING, PLC <br> Co-Counsel for Defendant <br> 1001 E Pennsylvania Avenue NW <br> Washington, DC 20004 <br> (202) 264-2687 <br> Fax (202) 628-5116 <br> ksooy@crowell.com <br> aross@crowell.com |

**PLAINTIFF JOAO ARLINDO ORNELAS DEBARROS' RESPONSE IN**
**OPPOSITION TO GENERAL MOTORS LLC'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii

I.   STATEMENT OF ISSUES .....................................................................vi

II.  STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITY............................................................................... vii

III. FACTUAL AND PROCEDURAL BACKGROUND ...............................1

IV.  ARGUMENT .........................................................................................4

   A. Plaintiff's Complaint Contains a Short Statement of Facts Demonstrating
      that He Is Entitled to Relief.................................................................4

   B. Plaintiff Has Pled a Viable Express Warranty Claim ................................5

   C. Plaintiff Has Pled a Viable Implied Warranty Claim ................................8

      1. Plaintiff meets the privity requirement under Georgia law. ..................8

      2. Plaintiff sufficiently alleged unmerchantability. ...............................9

   D. Plaintiff Has Pled a Viable Claim under the GFPA ................................12

      1. Plaintiff's claim is timely. .......................................................13

      2. Plaintiff's averments comply with Fed. R. Civ. P. 9(b).....................14

   E. Alternative Claims for Unjust Enrichment or Opportunistic Breach of
      Contract ......................................................................................16

      1. Plaintiff may plead unjust enrichment in the alternative.....................17

      2. Georgia has adopted the Restatement (Third) of Unjust Enrichment
         and Restitution. .....................................................................18

CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

**Cases** Pages

*Alpizar-Fallas v. Favero*,
908 F.3d 910 (3d Cir 2018) .................................................................... 14

*Amin v. Mercedes-Benz USA, LLC*,
301 F. Supp. 3d 1277 (N.D. Ga. 2018) .............................................*passim*

*Atl. Tallow Co. v. John W. Eshelman & Sons, Inc.*,
110 Ga. App. 737 (1964) ........................................................................ 5

*Atl. Waste Services, Inc. v. Mack Trucks, Inc.*,
2016 WL 1248942 (S.D. Ga. Mar. 25, 2016) ........................................ 8

*Bassett v. NCAA*,
528 F.3d 426, 430 (6th Cir. 2008) .......................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 4

*Buske v. Owens Corning*,
2017 U.S. Dist. LEXIS 39952 (N.D. Ga. March 20, 2017) ................... 16

*Chrysler Corp. v. Wilson Plumbing Co.*,
208 S.E.2d 321 (Ga. Ct. App. 1974) ...................................................... 8

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,
508 F.3d 327 (6th Cir. 2007) .................................................................. 4

*Duke Galish, LLC v. Manton*,
308 Ga. App. 316 (2011) ........................................................................ 5

*EMJ Corp. v. Laticrete Int'l, Inc.*,
934 F. Supp. 430 (M.D. Ga. 1996) ........................................................ 8

*Enslin v. Coca-Cola, Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ..................................................... 19

*Fabian v. Fulmer Helmets, Inc.*,
628 F.3d 278 (6th Cir. 2010) .................................................................. 4

*Ford Motor Co. v. Lee,*
    224 S.E.2d 168 (Ga. Ct. App. 1976) ........................................................... 8

*Fortson, v. Best Rate Funding Corp.,*
    2014 U.S. Dist. LEXIS 186641 (N.D. Ga. Sept. 2, 2014) .................................. 16

*GMRI, Inc. v. Independence Bank of Ga.,*
    212 F. Supp. 3d 1306 (N.D. Ga. 2016) ...................................................... 18

*Hemmings v. Camping Time RV Ctrs, L.L.C.,*
    2017 U.S. Dist. LEXIS 168417 (N.D. Ga. Oct. 11, 2017) ................................ 8

*Horne v. Claude Ray Ford Sales, Inc.,*
    162 Ga. App. 329 (1982) ....................................................................... 9-10

*In re Volkswagen Timing Chain Prod. Liab. Litig.,*
    2017 WL 1902160 (D.N.J. May 8, 2017) .................................................... 8

*Johnson v. Jaguar Cars, Inc.,*
    2006 U.S. Dist. LEXIS 41116 (N.D. Ga. June 6, 2006) ................................... 11

*Jones v. City of Cincinnati,*
    521 F.3d 555 (6th Cir. 2008) .................................................................. 4-5

*Kansas v. Nebraska,*
    ___ U.S. ___, 135 S.Ct. 1042 (2015) ...................................................... 18

*Lauria v. Ford Motor Co.,*
    169 Ga. App. 203 (1983) ....................................................................... 8

*Northville Downs v. Granholm,*
    622 F.3d 579 (6th Cir. 2010) .................................................................. 4

*Original Appalachia Artworks, Inc. v. Schlaifer,*
    679 F. Supp. 1564 (N.D Ga. 1987) .......................................................... 17

*Paces Ferry Dodge, Inc. v. Thomas,*
    331 S.E.2d 4 (1985) ............................................................................. 12

*PMS Constr. Co. v. De Kalb Cnty.,*
    243 Ga. 870 (1979) ............................................................................. 18

*Raidford v. Nat'l Hill Exchange, LLC*,
    2016 U.S. Dist. LEXIS 64888 (S.D. Ga. May 17, 2016) ...................................... 18

*Rippy ex rel. Rippy v. Hattaway*,
    270 F.3d 416, 419 (6th Cir. 2001) ............................................................................ 4

*Sanderson v. HCA-The Healthcare, Co.*,
    447 F.3d 873, 876 (6th Cir. 2006) .......................................................................... 14

*Solo v. UPS Co.*,
    819 F.3d 788 (6th Cir. 2016) ................................................................................... 17

*Soto v. CarMax Auto Superstores, Inc.*,
    271 Ga. App. 813 (2005) ..................................................................................... 9-10

*Terrill v. Electrolux Home Prods., Inc.*,
    753 F. Supp. 2d 1272 (S.D. Ga. 2010) ............................................................... 6, 17

*Tinsmann v. Linda Martin Homes Corp.*,
    281 Ga. 137 (2006) ................................................................................................ 12

*ULQ, LLC v. Meder*,
    293 Ga. App. 176 (2008) ......................................................................................... 6

*WESI, LLC v. Compass Envtl., Inc.*,
    509 F. Supp. 2d 1353 (N.D. Ga. 2007) ............................................................. 16-17

## Statutes and Court Rules

Fed. R. Civ. P. 8 ........................................................................................................... 14

Fed. R. Civ. P. 9(b) ..........................................................................................14, 16, 19

Fed. R. Civ. P. 10(c) ...................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 3

O.C.G.A. § 10-1-391 ...............................................................................................11-12

O.C.G.A. § 10-1-393 ............................................................................................ 12, 14-15

O.C.G.A. § 11-2-314 .......................................................................................... 9

**<u>Other Authority</u>**

*In re Gen. Motors. Corp.*,
    102 F.T.C. 1741 (1983) ............................................................................ 13

Restatement (Third) of Unjust Enrichment & Restitution § 39 .................................. 18

## I.   **STATEMENT OF ISSUES**

1.)   Has Mr. DeBarros sufficiently alleged that GM breached the terms of its express warranty?

2.)   Has Mr. DeBarros sufficiently alleged that GM breached the terms of the warranties implied by Georgia law?

3.)   Do GM's alleged breaches of express and implied warranties provide Mr. DeBarros standing to sue under the Magnuson-Moss Warranty Act?

4.)   Has Mr. DeBarros sufficiently alleged that GM violated the Georgia Fair Business Practices Act in a facially timely manner?

5.)   Has Mr. DeBarros sufficiently alleged that GM opportunistically breached its express warranty or, alternatively, unjustly enriched itself?

Mr. DeBearros respectfully suggests that this Court should answer these questions "yes."

II.   **STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1.) *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018)

2.) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

3.) *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 707 S.E.2d 555 (2011)

4.) *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278 (6th Cir. 2010)

5.) *In re Gen. Motors. Corp.*, 102 F.T.C. 1741 (1983)

6.) *Lauria v. Ford Motor Co.*, 169 Ga. App. 203, 312 S.E.2d 190 (1983)

7.) *Original Appalachia Artworks, Inc. v. Schlaifer*, 679 F. Supp. 1564 (N.D Ga. 1987)

8.) *PMS Constr. Co. v. De Kalb Cnty.*, 243 Ga. 870 (1979)

9.) *Sanderson v. HCA-The Healthcare, Co.*, 447 F.3d 873, 876 (6th Cir. 2006)

10.) *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010)

11.) *ULQ, LLC v. Meder*, 293 Ga. App. 176 (2008)

12.) *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353 (N.D. Ga. 2007)

13.) Restatement (Third) of Unjust Enrichment & Restitution § 39

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. DeBarros brought this case action because he purchased a 2015 Chevrolet Corvette Z06 ("Z06" or "Subject Vehicle") that proved to be defective.  Under the terms of the warranty provided by GM, Mr. DeBarros sought to have those defects repaired or the Subject Vehicle replaced.  While GM made attempts to repair the Subject Vehicle, it ultimately failed. Because GM failed in its contractual and statutory obligations to Plaintiff seeks declaratory and injunctive relief, incidental and consequential damages, restitution, costs of suit, attorneys' fees and other appropriate relief.

GM advertised that it designed and manufactured the Z06 to be "[a] driver's car with no equal", "a true world-class supercar", and that is was "the most capable model in the iconic car's 62 year history".  First Amended Complaint, Dkt. 11("AC") ¶¶ 12, 14. GM's marketing material called the 2015 Corvette Z06 its most powerful production car ever.  AC ¶ 15.  In addition, GM claimed that the Subject Vehicle included "[a]dvanced technologies", and an "optimized powertrain", built with a "mantra" of "precision".  AC ¶ 25.  At a bare minimum, GM represented the that Z06 could withstand the challenges of everyday driving. AC ¶ 116.  Plaintiff relied on these representations when purchasing his Z06.  AC ¶¶ 25, 75.

However, GM knew that the Z06 could not cool its engine properly.  AC ¶¶ 15, 19, 74, 77.  Prior to release, GM put the model through extensive testing, including "a 24hr accumulated track test to simulate the most aggressive track-day

usage". AC ¶¶ 15, 20. This testing specifically "validate[d] the durability of the Z06 cooling system." AC ¶ 20. Testing revealed that the Z06 could not cool itself properly. AC ¶ 15. When the Z06 overheats, it goes into "Limp Mode", wherein the Z06 automatically and drastically reduces speed. AC ¶ 16. This transition is unexpected and can cause drivers to become disoriented and lose control. AC ¶ 18. On streets and highways, this rapid deceleration poses a risk not only to drivers, but to other motorists as well, because no one is expected to anticipate that a car's engine will, on its own, slow down. AC ¶ 18.

GM never disclosed the problems endemic in the Z06's cooling system. AC ¶ 20. Rather, it advertised the superiority of the cooling system. AC ¶¶ 15, 117. In marketing material, it emphasized the performance characteristics of its cooling system and, in technical service bulletins, it claimed that, in 86ºF weather, the engine would remain "below hot warning targets" when driven "for an indefinite period of time" or "a full tank of fuel". AC ¶¶ 17, 20.

Relying on GM's representations, Plaintiff purchased the Subject Vehicle on April 24, 2015, from an authorized GM dealership for his personal use. AC ¶ 22-26. As part of the transaction, Plaintiff received a written warranty. *Id.* This warranty extends to any repair or replacements needed during its term or due to defects in materials or workmanship. *Id.*

Within two (2) months of delivery, the Subject Vehicle overheated under everyday driving conditions in temperatures below 86ºF. AC ¶¶ 27-40; *see* Dkt. 11-3.

From the June 10, 2015 through April 8, 2018, Plaintiff returned the Subject Vehicle to authorized GM dealerships for warranty repairs on at least eleven (11) occasions for a total of at least 99 days of repair work.  *Id.*  Reports from these attempts state that the Subject Vehicle could not be driven 100 miles without overheating, that it overheated while idling and in stop-and-go traffic, and, on at least one occasion, required a tow to the dealership for repairs.  *Id.*  GM never told Plaintiff that his vehicle suffered from a design defect, rather it referred him to GM technical service bulletin PIP5311C, which reiterated that the Subject Vehicle was not designed to perform as it had for Plaintiff.  Dkt. 11-3 at 20.  Nevertheless, despite GM's repair attempts, the Subject Vehicle continued to overheat in temperatures below 86ºF.  AC ¶¶ 29-40, 48-50.

Plaintiff wrote to GM to give it one last chance to repair or replace the Subject Vehicle.  AC ¶ 48-50.  It declined to do so.  *Id.*  As a result, Plaintiff filed this case. GM removed it to the Federal District Court for the Northern District of Georgia and requested that it be transferred to the Eastern District of Michigan.  Plaintiff did not object because there are certain efficiencies to be gained from pre-trial coordination.  However, at the conclusion of discovery, this case should be returned to the Northern District of Georgia for trial.

IV.   **ARGUMENT**

A.   **Plaintiff's Complaint Contains a Short Statement of Facts
Demonstrating that He Is Entitled to Relief**

The standard for addressing a Federal Rule of Procedure ("Rule") 12(b)(6)

motion has become an axiom of federal practice - whether, as a matter of law, if all

the factual allegations set forth in a complaint, and the inferences therefrom, are true,

the plaintiff is entitled to relief. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th

Cir. 2001). In so doing, Courts must view the complaint in a light most favorable to

the plaintiff. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). A plaintiff "must

plead 'enough factual matter that . . . [it] state[s] a claim to relief that is plausible on its

face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Plausibility requires

showing more than the 'sheer possibility' of relief but less than a 'probab[le]'

entitlement to relief.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.

2010)(quotation omitted).

Under this framework, a court may only consider the pleadings. *Jones v. City of

Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). However, a court may consider exhibits

appended to them, documents cited that are "integral to the claims," documents that

govern the plaintiff's rights, and matters subject to judicial notice.  *Northville Downs v.

Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (citing Fed. R. Civ. P. 10(c)); *Commercial

Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).  Beyond

these materials, a court must confine its analysis of the facial sufficiency of the

4

complaint to the complaint itself. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### B. Plaintiff Has Pled a Viable Express Warranty Claim[1]

GM attempts to tie Plaintiff's claims to the putative class action in *Matanky v. General Motors LLC*, No. 2:18-cv-10601-VAR-APP, but at its heart, this is an individual case based on the state and federal laws that cover automobile warranties. GM appears to admit that the design of the Subject Vehicle was defective. But, whether the problems with its product are due to a design defect or defects in materials and workmanship cannot be resolved from the First Amended Complaint. *See Jones,* 521 F.3d at 562. Rather, its well-pled facts establish that GM breached its express warranties.

To prevail, Plaintiff must prove breach of contract because "[a]n express warranty is a contract." *Atl. Tallow Co. v. John W. Eshelman & Sons, Inc.*, 140 S.E.2d 118, 127 (Ga. App. 1964). Plaintiff must plead facts that show "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the [breach]." *Duke Galish, LLC v. Manton*, 707 S.E.2d 555, 559 (Ga. App. 2011).

---

[1] GM's only argument in favor of dismissing Plaintiff's claims under the Magnuson-Moss Warranty Act ("MMWA") is that they cannot be sustained absent viable claims for breaches of express or implied warranties. Dkt. 13 at 7. For the reasons set forth in Sections B and C of this Memorandum, Mr. DeBarros has pled viable claims for breaches of express and implied warranties. Accordingly, this court should decline GM's invitation to dismiss his MMWA claims. *See Amin*, 301 F. Supp. 3d at 1289.

Here, GM disputes only that Plaintiff asserted a breach. *See* Dkt. 13 at 3. However, in the warranty, GM promised to repair any defect in the Subject Vehicle for the first 36,000 miles or within the first three (3) years after delivery. *Id.* at 8. GM claims, under its warranty, it will make repairs "to correct any vehicle defect." AC at ¶ 26. Beyond the written promises in GM's warranty, Georgia law implies in every contract "a duty of good faith and fair dealing in its performance." *ULQ, LLC v. Meder*, 293 Ga. App. 176, 179 (2008). Meaning that a party to a contract is required to "perform their promises . . . And, where the manner of performance is left . . . to the discretion of one of the parties, [it] is bound to the exercise of good faith." *Id.* (quotation omitted). Plaintiff asserts that GM breached these obligations.

While GM claims that its Z06 suffers from a defective design,[2] Plaintiff has asserted that the Subject Vehicle was manufactured or was composed of materials that did not conform to that design. *See* AC ¶¶ 16-17, 20-40, 46-49, 53-55. Plaintiff averred that GM designed the Z06 to be without equal. AC ¶ 14. Further Mr. DeBarros alleges that GM advertised that the Z06 included design special elements to properly cool the vehicle. AC ¶ 17. GM states that the Z06 is designed and validated "to keep . . . [the engine] below the hot warning targets when driving" on an 86°F day

---

[2] GM's attempts to avoid its warranty by suggesting does not apply here, is undermined by its repeated attempts to repair the defects under the terms of the warranty. It should be estopped from arguing that the warranty cannot apply to the defects at issue in this case. *See Terrill v. Electrolux Home Products, Inc.,* 753 F. Supp. 2d 1272 (S.D. Ga. 2010)(manufacturer held to limited warranty for design defect).

for "the time to burn through a full tank of fuel." AC ¶ 20. In other words, in 86°F weather, a Z06 of average quality should be able to run through an entire tank of gas without overheating. AC ¶ 21.

However, the Subject Vehicle did not conform to that design. *See* AC ¶ 27-40. The Subject Vehicle was tendered to authorized GM dealerships for repairs on 11 occasions, keeping it out of service for 99 days. *See id.* When Plaintiff presented the Subject Vehicle for repairs, the temperatures in Atlanta were consistently below 86°F. *See id.* Yet, even though GM designed the Z06 for indefinite use at 86°F, the Subject Vehicle overheated in stop-and-go traffic and while idling. AC ¶¶ 20-21, 33, 35. To address this, among other repairs, GM replaced the coolant pump in the Subject Vehicle four (4) times. AC ¶¶ 27-40. Nevertheless, the defects persisted. AC ¶ 46.

Plaintiff wrote to GM asking it to repair, replace, or repurchase the Subject Vehicle. AC ¶ 48-49. It declined to do so. *Id.* Thereby, it breached its obligations under its express warranty and the implied covenant of good faith and fair dealing.[3] As Plaintiff has set forth a valid breach of warranty claim, this Court deny GM's Motion to Dismiss.

---

[3] Notably, GM does not attack Plaintiff's claim for breach of warranty by virtue of breach of the implied covenant of good faith and fair dealing.

### C.     Plaintiff Has Pled a Viable Implied Warranty Claim

    1.     **Plaintiff meets the privity requirement under Georgia law.**

Under Georgia law, Plaintiff is in privity with GM. Defendant GM's controlling authority demonstrates that its argument to the contrary does not withstand scrutiny. *See Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1287-89 (N.D. Ga. 2018)( denying motion to dismiss implied warranty claims in a similar transaction); *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010)(cited as controlling by GM). Indeed, numerous cases applying Georgia law have found manufacturers to be in privity with the end consumer when the product was purchased from an authorized dealer.[4] *See Hemmings v. Camping Time RV Ctrs., L.L.C.*, 2017 U.S. Dist. LEXIS 168417, *14-17 (N.D. Ga. Oct. 11, 2017).[5]

As explained in *Hemmings*, under Georgia law "[w]here an automobile manufacturer, through its authorized dealer, issues to a purchaser . . . a warranty as part of the sale, [] an implied warranty of merchantability is in effect despite the lack of actual privity." 2017 U.S. Dist. LEXIS 168417 at 15 (quoting *Lauria v. Ford Motor*

---

[4] None of the cases cited by GM to suggest Mr. DeBarros lacks privity acknowledge, address, or abrogate this exception. *See* Dkt. 13 at 5. Nor does this authority addresses the type of transaction at issue here.

[5] *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, *16 (D.N.J. May 8, 2017) (Ga. law); *Atl. Waste Services, Inc. v. Mack Trucks, Inc.*, 2016 WL 1248942 (S.D. Ga. Mar. 25, 2016); *EMJ Corp. v. Laticrete Int'l, Inc.*, 934 F. Supp. 430 (M.D. Ga. 1996); *Ford Motor Co. v. Lee*, 224 S.E.2d 168 (Ga. App. 1976), rev'd in part on other grounds, 229 S.E.2d 379 (Ga. 1976); *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321 (Ga. App. 1974).

*Co.*, 169 Ga. App. 203, 205, 312 S.E.2d 190 (1983)). While a manufacturer can attempt to disclaim an implied warranty, the Magnuson-Moss Warranty Act ("MMWA") prohibits sellers from disclaiming implied warranties. *Id.* at *16 (citing 15 U.S.C. § 2308(a)). Therefore, when a plaintiff purchases a car from an authorized dealer, under Georgia law, the plaintiff is in privity with the manufacturer.

Here, Plaintiff purchased the Subject Vehicle from an authorized GM dealership with express warranties from GM. AC ¶¶ 11, 22-26, 43-44. Therefore, under Georgia law, Plaintiff is in privity with GM.

## 2. Plaintiff sufficiently alleged unmerchantability.

Plaintiff has alleged facts that, when proven, will demonstrate that GM breached the implied warranty of merchantability. Under Georgia law, "a warranty that the goods shall be merchantable is implied in a contract for their sale". O.C.G.A. § 11-2-314(1). This means they must "pass without objection in the trade under the contract description" be "of fair average quality" and "fit for the ordinary purposes for which such goods are used." O.C.G.A. § 11-2-314(2). A vehicle that overheats in stop-and-go traffic cannot conform to these warranties.

Once again, GM's contentions to the contrary are undermined by the authority it says controls. In *Amin*, the court denied a car manufacturer's motion to dismiss implied warranty claims where the plaintiffs alleged that defects in their cars' HVAC system led to "odor [that] cause[s] the Vehicle's [] cabin to be unbearable and thus, unusable for its intended purpose." 301 F. Supp. 3d at 1288. In so doing, the *Amin*

court acknowledged that, under Georgia law "[c]ars are fit for their ordinary purpose of transportation . . . so long as their 'drivability or usefulness' is not affected by the defect alleged." *Id.* at 1287. Thus, *Amin* held whether the defects alleged "impact[ed] the safety, drivability, and usefulness of the [] Vehicles" was a question of fact that could not be resolved from plaintiffs' complaint, but that the allegations that the defects did was sufficient at the motion to dismiss stage. *Id.* at 1288.

In reaching this conclusion, the *Amin* court distinguished both *Horne* and *Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108 (Ga. App. 2005), which are cited by GM. *Amin*, 301 F. Supp. 3d at 1287-88; *see* Dkt. 13 at 6. In *Horne*, the Georgia Court of Appeals addressed a directed verdict for the defendants, where, during trial, "the plaintiff admitted that the damage to the [car] had not affected the car's usefulness or its drivability." *Horne*, 290 S.E.2d at 499. In *Soto*, the Georgia Court of Appeals addressed summary judgment for the defendant, where the plaintiff presented no evidence of a defect in the vehicle at the time of sale or of unmerchantability. *Soto*, 611 S.E.2d at 109-10. The *Amin* court distinguished *Soto* because it involved a "used car 'with more than 57,000 miles'". *Amin*, 301 F. Supp. 3d at 1288. Because the *Soto* car was used, the *Soto* panel concluded that it "was merchantable where (1) most alleged defects 'were resolved in timely fashion and never rendered the vehicle unusable'; (2) used cars of that nature passed in trade without objection, and (3) car was 'clearly capable of being driven'". *Id.* While both the *Horne* and *Soto* plaintiffs failed to adduce evidence that defects rendered their cars unmerchantable, on a

motion to dismiss, a plaintiff need only "allege[] facts that . . . would show that the defect at issue affects the drivability, safety, and usefulness of [his] car[]." *Amin*, 301 F. Supp. 2d at 1288.

All of GM's Georgia law cases resolve plaintiffs' failures to adduce evidence that the defects in their vehicles rendered them unmerchantable. But, here, Mr. DeBarros has asserted that a vehicle designed for continuous "aggressive" driving on racetracks in 86°F weather, repeatedly overheated at temperatures below 86°F when it was idling, in stop-and-go traffic, and everyday driving conditions. AC ¶¶ 14, 20, 27-40. This defect impacts the safety, drivability, and usefulness of the car in a manner that breaches GM's implied warranties.

Plaintiff has asserted that the type of overheating the Subject Vehicle experiences causes it to immediately lose speed and power. AC ¶ 18. This is because the sources of the heat are the engine and transmission. AC ¶ 16. Mr. DeBarros avers that the sudden decrease in engine power and speed can cause a driver to become disoriented and that this unexpected transition, puts other drivers at risk who cannot anticipate a vehicle to rapidly decelerate on a highway or other road. AC ¶ 18. In other words, because the Subject Vehicle overheats under normal driving conditions, it is less safe, less drivable, and less useful. Plaintiff is not demanding a perfect Z06, just one that can commute without needing to be towed-in for repairs. *See* Dkt. 11-3 at 10. Instead, GM manufactured this Subject Vehicle so that it cannot travel more than 100 miles without overheating. *See* Dkt. 11-3 at 17. These facts

demonstrate that the Subject Vehicle is of insufficient quality and not fit for its ordinary purpose. *See Johnson v. Jaguar Cars, Inc.*, 2006 U.S. Dist. LEXIS 41116, *13 (N.D. Ga. June 6, 2006). Plaintiff has pled a viable breach of implied warranty claim.

### D.    Plaintiff Has Pled a Viable Claim under the GFPA

Mr. DeBarros sufficiently alleged that GM violated the Georgia Fair Business Practices Act ("GFPBA"), O.C.G.A. § 10-1-390, *et seq.* The GFPBA outlaws unfair and deceptive practices in consumer transactions. *See* O.C.G.A. § 10-1-391. The purpose of the FBPA is "to protect consumers . . . from unfair or deceptive practices in the conduct of . . . commerce" O.C.G.A. § 10-1-391(a). The Georgia legislature intended that the FBPA should "swiftly stop" these practices and to that end prescribed that the FBPA "shall be liberally construed and applied to promote its underlying policies and purpose." *Id.* Under the FBPA, it is unlawful to "[r]epresent[] that goods or services are of a particular standard, quality or grade . . . if they are of another". O.C.G.A. § 10-1-393(7). Further it is unlawful to represent "that goods have . . . characteristics . . . uses, benefits, or qualities that they do not have". O.C.G.A. § 10-1-393(5). Finally, it is unlawful to advertise "goods . . . with the intent to sell them not as advertised." O.C.G.A. § 10-1-393(9).

To prove a claim under the GFPBA, a private plaintiff must demonstrate "a violation of the Act, causation, and injury." *Amin*, 301 F. Supp. 3d at 1289 (quoting

12

*Tinsmann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006)).[6] While justifiable reliance is required under the GFBPA, proof "of unfair or deceptive acts or practices . . . does not require proof of an intentional conduct on the part of the defendant." *Id.* at 1290. Plaintiff has sufficiently pled violations of the GFPBA.

### 1. Plaintiff's claim is timely.

To the extent this Court should consider Defendant's affirmative defense of statute of limitations, the defense is undermined by GM's own controlling authority. *See Amin*, 301 F. Supp. 3d at 1291-92. Like GM does here, in *Amin*, defendant "Mercedes argue[d] that [plaintiff's] GFPBA claim is time-barred because, according to the Complaint, [plaintiff] first noticed the [issue] in 2014 and did not file suit until 2017 – outside of the two-year statute of limitations." *Id.* at 1291. While the *Amin* court recognized that the "statute of limitations begins to run" when "the claim can first be successfully maintained" and "ignorance of the facts" does not prevent it from running, the *Amin* court determined that "it was 'not apparent on the face of the Complaint when Plaintiff knew or should have known of the [] violation of the GFBPA'" *Amin*, 301 F. Supp. 3d at 1291. Instead, the *Amin* court concluded that Mercedes conduct amounted to misrepresentation of the nature of the defect despite the plaintiffs' diligence. *Id.* at 1291-92. The *Amin* court acknowledged a pattern of

---

[6] *See Paces Ferry Dodge, Inc. v. Thomas*, 331 S.E.2d 4 (1985)(affirming verdict against defendant dealership for a defect that should have been discovered prior to sale or delivery).

conduct wherein the vehicles were "treated with 'temporary measures,'" but 'never permanently corrected'" the defect and "did 'not prevent [its] recurrence'" *Id.* at 1282.

*Amin* mirrors the case at bar.  Here, Mr. DeBarros sought repairs on 11 occasions amounting to around or 99 days of repairs.  AC ¶¶ 27-40.  GM attempted repairs, but could not prevent the car from overheating under normal conditions.  *Id.* If the Z06 was defective, GM had an affirmative obligation to disclose it.  *See In re Gen. Motors. Corp.*, 102 F.T.C. 1741 (1983).  Rather than disclose that the Z06's cooling system was defective, GM issued Service Bulletin PIP 5311C.  AC ¶¶ 20.  Plaintiff was specifically directed to this service bulletin by GM when he sought service.  *Id.*  This course of conduct convinced Mr. DeBarros that his car was a lemon, not a car with a design defect.  AC ¶¶ 48-50, 54-55, 63-66.  He retained a law firm named "Lemon Law Group Partners, PLC" to have GM honor its warranty commitments.  *See generally,* AC.  GM's conduct concealed its unfair and deceptive practices.  Therefore, as in *Amin* and *Fortson*, GM's statute of limitations defense cannot be resolved from Plaintiff's complaint.  Accordingly, this Court should allow Plaintiff GFBPA claims to proceed.

### 2.  Plaintiff's averments comply with Fed. R. Civ. P. 9(b).

Plaintiff has complied with Rule 9(b).  As the Defendant's authority recognizes, when analyzing a claim under Rule 9(b) "a court must also consider the policy favoring simplicity in pleading" codified in Rule 8.  *Sanderson v. HCA-The Healthcare, Co.*, 447 F.3d 873, 876 (6th Cir. 2006).  "[T]he two rules must be read in harmony"

because "Rule 9(b)[] . . . does not mute the [] principles set out in Rule 8." *Id.* The "heightened standard" identified by GM specifically applies "in *qui tam* actions". *Id.* at 877; *see* Dkt. 13 at 9. Generally, however, the "minimum[] 9(b) requires [is] that the plaintiff specify the 'who, what, when, and how' of the alleged fraud" and no more. *Id.* at 877. Put another way, Rule 9(b) requires that "plaintiffs state the circumstances . . . with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged". *see Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir 2018) (quotations omitted). Plaintiff has done just that.

Plaintiff has asserted violations of the GFBPA, including sections 10-1-393(5), (7), and (9). *See* E, *supra*. With respect to the Z06, (who) GM; (what) violated O.C.G.A. § 10-1-393(5),(7), (9); (when) on or about April 24, 2015; and (how) plaintiff justifiably relied on representations in GM's marketing material that the Z06 was "[a] driver's car with no equal", with special features designed to properly cool the vehicle, and that is was "the most capable model in the [] car's [] history", when GM knew it was not. AC ¶¶ 9, 11-23, 66-76; Dkt. 11-2.

Following purchase, (who) GM; (what) violated O.C.G.A. § 10-1-393(5),(7), (9); (when) on or about June 10, 2015, August 5, 2015, November 9, 2015, August 3, 2016, August 8, 2016, November 4, 2016, December 6, 2016, March 8, 2017, June 7, 2017, July 5, 2017, and April 6, 2018; and (how) justifiably convinced Plaintiff his Z06 suffered from defects in manufacturing and workmanship by performing repairs under its warranty to address the Subject Vehicle's inability to survive the rigors of

stop-and-go traffic without overheating.  AC ¶¶ 27-40, 42-50, 54-55, 63-66, 73-78; Dkt. 11-3.  Indeed, GM referred Plaintiff to PIP5311C, which represented the Z06 could "keep the engine . . . below hot warning targets" on an 86°F day "for an indefinite period of time".  AC ¶ 20; Dkt. 11-3 at 20. Despite GM's repair attempts, the Subject Vehicle continued to overheat in temperatures below 86ºF.  AC ¶¶ 29-40. Through this conduct, GM misrepresented the standard, quality, grade, characteristics, uses, benefits, or qualities of the Z06, and advertised the Z06 without intending to provide Z06s that conformed to these representations.  These allegations comply with Rule 9(b).[7]

### E. Alternative Claims for Unjust Enrichment or Opportunistic Breach of Contract

Plaintiff has pled viable alternative claims for unjust enrichment or opportunistic breach of contract.  While a plaintiff cannot recover under both theories, a plaintiff can maintain alternative claims for unjust enrichment or breach of contract until the time of trial.  *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1362-63 (N.D. Ga. 2007). Alternative theories are necessary because Defendant asserts its conduct falls outside the terms of an enforceable contract and relies on that

---

[7] These are illustrations of GM's affirmative conduct.  Plaintiff also may proceed under a theory that GM omitted the existence of defects in the Subject Vehicle.  *See Fortson, v. Best Rate Funding Corp.*, 2014 U.S. Dist. LEXIS 186641, * 10-11, (N.D. Ga. Sept. 2, 2014).  Plaintiff alleged that GM omitted this information at the time of sale and during the attempts to repair the Subject Vehicle. AC ¶¶ 9-47, 51-52, 60-76.

contract to avoid its equitable duties. Because Mr. DeBarros has pled facts that will allow him to prevail, independently, on each of these theories, this court should allow them to proceed.

### 1. Plaintiff may plead unjust enrichment in the alternative.

Defendant relies on *Buske v. Owens Corning*, 2017 U.S. Dist. LEXIS 39952 (N.D. Ga. March 20, 2017) for the proposition that warranty and unjust enrichment claims cannot coexist prior to trial. Dkt. 13 at 10. *Buske* is inapposite because it involves an alleged manufacturing defect, only, covered by an express warranty. 2017 U.S. Dist. LEXIS 39952 at *2, *5-6. To the contrary, here the Plaintiff could prove the Subject Vehicle suffers from a manufacturing defect, covered by the warranty, or a design defect, concealed from the public by GM in violation of its consent decree with the FTC and Georgia law.[8]

Similarly, in *Solo v. UPS Co.* the Sixth Circuit reversed the dismissal of alternative unjust enrichment claims because the defendant could deny a contract applied or that the parties were in privity. 819 F.3d 788, 796-97 (6th Cir. 2016). In other words, when a defendant seeks to avoid a contract, a plaintiff could be left without an adequate legal remedy. *See id.*; *WESI, LLC,* 509 F. Supp. 2d at 1362-63.

---

[8] Similarly, *Terrill* is inapposite because the defendant manufacturer conceded that its limited warranty addressing defects in material or workmanship extended to design defects. 753 F. Supp. 2d at 1282-84, 1291. Because GM contests whether the warranty "govern[s] the subject matter of the dispute", this Court should allow Plaintiff's unjust enrichment claim to survive. *Id.* at 1291 (quotation omitted).

Therefore, Plaintiff should be allowed to pursue his unjust enrichment claim in the event he cannot prove breach of contract. *See Original Appalachia Artworks, Inc. v. Schlaifer*, 679 F. Supp. 1564, 1579 (N.D Ga. 1987)("[a]t trial the jury will be instructed that [plaintiff] may recover on its . . . unjust enrichment claim only if the jury finds there was no breach of contract").

## 2. Georgia has adopted the Restatement (Third) of Unjust Enrichment and Restitution.

Plaintiff adopted the term "opportunistic breach of contract", not from Justice Thomas' dissent in *Kansas v. Nebraska*, _ U.S. _, 135 S.Ct. 1042, 1068 (2015), but from section 39 of the Restatement (Third) of Unjust Enrichment and Restitution ("3d Restatement"). *See* 3d Restatement § 39. GM cites no authority for the proposition that Georgia has not adopted the 3d Restatement. *See* Dkt. 13 at 11 n. 3. Indeed, courts applying Georgia law, apply the 3d Restatement. *See GMRI, Inc. v. Independence Bank of Ga.*, 212 F. Supp. 3d 1306 (N.D. Ga. 2016); *Raidford v. Nat'l Hill Exchange, LLC*, 2016 U.S. Dist. LEXIS 64888, *31 (S.D. Ga. May 17, 2016).

Restitution has long been a remedy available for breach of contract under Georgia law. *See, e.g. PMS Constr. Co. v. De Kalb Cnty.*, 243 Ga. 870, 872-73 (1979). It operates to "put [plaintiff] in as good a position as if the defendant had fully performed the contract." *Id.* Restitution for opportunistic breach of contract is a theory of recovery that applies "when a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate

protection to the promisee's contractual entitlement measured by the profit realized to the defaulting promisor." *Enslin v. Coca-Cola, Co.*, 136 F. Supp. 3d 654, 676 (E.D. Pa. 2015)(quotation omitted).  This form of breach of contract occurs when the defendant makes an "opportunistic calculation" that results in profit "such that the gain to the defendant . . . will exceed the injury to the plaintiff". *Id.* at 677.

GM does not challenge the sufficiency of Plaintiff's alternative claims, only the claims' availability.  Plaintiff's complaint sets forth a deliberate course of conduct by the Defendant to knowingly manufacture and sell the Z06 as a high performance car, with a cooling system is unable to survive the meager burden of stop-and-go driving. Rather than provide a proper cooling system in the first instance or provide a post-sale fix, GM denied the existence of the problem and attempted a series of Sisyphean repairs.  GM knew better.  It profited beyond the cost of the Subject Vehicle to the Plaintiff.  Accordingly, Plaintiff should be able to recover under alternative theories of opportunistic breach of contract or unjust enrichment.

## <u>CONCLUSION</u>

Mr. DeBarros' Amended Complaint offers a short statement of facts that, when proven, will entitle him to relief.  He has sufficiently alleged that GM breached express and implied warranties. These valid state-law claims entitle him to relief under the MMWA.  Further, he has sufficiently alleged that GM violated the GFBPA and brought those allegations within the statute of limitations.  These allegations comply with Rule 9(b).  Finally, he has sufficiently alleged alternative claims for unjust enrichment and opportunistic breach of contract.  For these reasons, this Court should deny Defendant GM's Motion to Dismiss in its entirety.

Respectfully submitted,

LEMON LAW GROUP PARTNERS, PLC

<u>s/ Edward L. Ewald, Jr.</u>
Edward L. Ewald, Jr. (P43751)
Attorneys for Plaintiff
48660 Pontiac Trail, #930792
Wixom, MI 48393
(313) 510-3329
edwardewald@comcast.net

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 4, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further certify that I emailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A

*s/Edward L. Ewald, Jr.*
Edward L. Ewald, Jr. (P43751)
Attorney for Plaintiff
48660 Pontiac Trail #930792
Wixom, MI  48393
313.510.3329
248.856.2247 fax
edwardewald@comcast.net