UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAO ARLINDO ORNELAS DeBARROS,

    Plaintiff,

v.                                                                            Case No. 19-10071
                                                                          Honorable Victoria A. Roberts

GENERAL MOTORS LLC,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF No. 13]

**I.    INTRODUCTION**

This case arises out of Plaintiff Joao Arlindo Ornelas DeBarros' ("DeBarros") purchase of a 2015 Chevrolet Corvette Z06 ("Z06"). In his amended complaint, DeBarros alleges, among other things, that his Z06 is defective and that Defendant General Motors LLC ("GM"), the manufacturer of the Z06, breached written and implied warranties by failing to repair or replace his car which presented with numerous instances of overheating during normal driving conditions.

Before the Court is GM's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

GM's motion is **GRANTED IN PART** and **DENIED IN PART**.

**II.    BACKGROUND**

DeBarros purchased his Z06 in April 2015 from a GM-authorized dealership in Georgia. The Z06 came with GM's New Vehicle Limited Warranty ("Warranty"), an express warranty providing "bumper-to-bumper" coverage for the first three years or 36,000 miles, whichever comes first.

DeBarros alleges he bought the Z06 based on GM's representations that the Z06: (1) was a "true world-class supercar," "[a] driver's car with no equal," "the most capable model in the iconic car's 62-year history," and GM's most powerful production car ever; (2) "featured '[a]dvanced technologies,' an 'optimized powertrain, and a 'mantra' of 'precision'"; (3) was equipped with certain features, including larger front fender vents, to deliver the most possible airflow to the engine; and (4) could handle the stresses of everyday driving. DeBarros further claims that he relied on GM's Warranty, under which he alleges GM promised to correct "any vehicle defect."

Despite GM's representations, DeBarros alleges he began experiencing problems with his car shortly after purchase. He alleges his Z06 repeatedly overheated during normal driving conditions, causing the car to operate at significantly reduced speeds and/or unexpectedly enter "Limp Mode" – the car would drastically lose power and speed, greatly increasing the risk of accident. Moreover, DeBarros claims that GM failed to correct the defect despite many opportunities to do so.

Specifically, DeBarros alleges that from June 2015 to August 2018, he returned his Z06 to GM-authorized dealerships for repairs related to the cooling system on 11 occasions, for approximately 99 days of repair work:

> 1. June 10, 2015: DeBarros presented his Z06 for service after experiencing engine overheating and drastic loss of power and speed (i.e., "Limp Mode"); the high temperature that day was 85°F. The repair order states that the conditions could not be duplicated; however, it also indicates that the car was dropped off and returned with the same mileage – 1,843 miles.
>
> 2. August 5, 2015: DeBarros presented his car with overheating and Limp Mode issues; the weather was 85°F that day. The dealership again indicated that it could not reproduce the overheating and Limp Mode issues.

2

3. November 9, 2015: Same complaints as previous two visits. Dealership drove the car for four miles but could not reproduce overheating and Limp Mode issues. High temperature that week was 74°F.

4. August 3, 2016: DeBarros reported that his car was overheating "in stop and go traffic" and the "hot idle engine" warning would not clear even after letting the car cool down. The average temperature that day was 83°F. The GM dealership determined the coolant pump was leaking and replaced it.

5. August 8, 2016: DeBarros presented his car complaining of "a weird burning smell coming from the vehicle when hot" and a "rattle noise."

6. November 4, 2016: During scheduled maintenance, DeBarros complained his car's engine was overheating while idle. Dealership diagnosed a leak in the coolant pump, the second such leak, and replaced it. Weekly high of 86°F.

7. December 6, 2016: DeBarros presented his car with coolant pump issues, and it was replaced for a third time. The high temperature that week was 64°F.

8. March 8, 2017: DeBarros presented his car with ongoing overheating issues. Without test driving the car, the dealership indicated that it could not verify the concern. High temperature of 76°F that week.

9. June 1, 2017: DeBarros presented his car with overheating complaints, and the dealership found that the cooling system boiled over. Weekly high of 86°F.

10. July 5, 2017: DeBarros presented his car with cooling issues; the dealership replaced the coolant pump for the fourth time. Weekly high of 82°F.

11. April 6, 2018: DeBarros presented his Z06 for repairs; the dealership replaced the radiator surge tank upon concluding that it leaked when the car was hot. Weekly high of 81°F.

During one service visit, DeBarros was referred to GM Service Bulletin PIP5311C, which states that: (1) the Z06 "is designed to keep engine oil, coolant, transmission and differential fluids below the hot warning targets when driving . . . on [an 86°F day] . . . for an indefinite period of time (effectively the time to burn through a full tank of fuel)"; and (2) GM's "team validates the durability of the Z06 cooling systems with a 24hr accumulated track test to simulate the most aggressive track-day usage by our customers."

3

DeBarros alleges that his Z06 frequently overheated "under the limited stress and strain of stop-and-go traffic" when the temperature was at or below 86°F. DeBarros says "[his] Z06 is defective" "based on GM's own standard." He says GM essentially acknowledged that the Z06 had a defectively designed cooling system in 2016, because it changed the design of the 2017 model to incorporate a new hood with larger vents.

DeBarros claims that he would not have purchased the Z06 or would have paid less for it had he known it was defective and would not perform as advertised.

DeBarros filed this action in Georgia state court in October 2018. GM removed the case to the United States District Court for the Northern District of Georgia and moved for the case to be transferred to this district. Noting that DeBarros did not respond to GM's motion, the court granted the motion and transferred the case to this Court.

On February 28, 2019, DeBarros filed an amended complaint asserting five counts: (I) breach of express warranty; (II) breach of the implied warranty of merchantability; (III) violation of the Magnuson-Moss Warranty Act ("MMWA"); (IV) violation of the Georgia Fair Business Practices Act ("GFBPA"); and (V) "unjust enrichment/opportunistic breach of contract."

GM moves to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed.

In its reply brief, GM "withdraws its request to dismiss plaintiff's implied warranty claim (Count II) and derivative MMWA claim (Count III)."

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. The federal rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action"). Ultimately, the question is "'not whether [the plaintiff] will ultimately prevail' . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citations omitted).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the

record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

## IV. ANALYSIS

### A. BREACH OF EXPRESS WARRANTY CLAIM

DeBarros alleges that GM breached its Warranty by failing to correct his car's overheating defect. He says he gave GM 11 opportunities to do as the Warranty represents: "correct any vehicle defect."

GM says DeBarros' express warranty claim fails because it does not cover design defects. Specifically, GM argues: (1) DeBarros alleges a design defect (i.e., the complaint alleges that the design of the Z06 failed to conform to marketing representations, and that all 2015-2016 Z06s have a defectively designed cooling system); and (2) the Warranty only covers defects related to "materials or workmanship," language which courts have limited to manufacturing defects, *see McKee v. Gen. Motors LLC*, No. 2:18-CV-11303, 2019 WL 1326679, at *3 (E.D. Mich. Mar. 25, 2019) ("manufacturing defects can be understood as defects in 'material or workmanship'") (internal quotation marks omitted).

The parties dispute whether the Warranty covers all vehicle defects or only defects related to materials or workmanship.

In relevant part, GM's Warranty "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." [*See* Warranty, p. 4].

DeBarros maintains that the Warranty requires GM to "correct any vehicle defect" for the first 36,000 miles or first three years after delivery. GM argues that "the actual

6

words [of the Warranty] limit coverage to 'any vehicle defect . . . related to materials or workmanship occurring during the warranty period.'" GM says the "related to materials or workmanship" language limits the Warranty's coverage to manufacturing defects, such that it does not cover the alleged design defect.

GM fails to establish that it is entitled to dismissal under Rule 12(b)(6). In seeking dismissal of DeBarros' express warranty claim, GM asks the Court to construe the Warranty. However, nowhere in its brief does GM identify which state's law should govern this contractual dispute, nor does it provide the applicable contract interpretation principles that the Court should use. Without this, the Court will not construe the Warranty.

DeBarros alleges that GM promised to "correct any vehicle defect" under the Warranty. Accepting this allegation as true, DeBarros states a plausible breach of express warranty claim.

The Court DENIES GM's motion to dismiss DeBarros' breach of express warranty claim (Count I).

**B.      MAGNUSON-MOSS WARRANTY ACT ("MMWA") CLAIM**

GM moves to dismiss DeBarros' MMWA claim based on breach of express warranty. Its basis for dismissal is that since DeBarros has no viable breach of express warranty claim under state law, his derivative MMWA claim based on breach of express warranty cannot be sustained.

The Court DENIES GM's motion to dismiss DeBarros' MMWA claim (Count III) based on breach of express warranty because DeBarros plausibly alleges a breach of express warranty claim.

7

### C. GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA") CLAIM

GM moves to dismiss DeBarros' GFBPA claim, arguing that: (1) the claim is time-barred; and (2) the claim does not have sufficient factual support.

#### i. Statute of Limitations

GM says DeBarros' GFBPA claim is time-barred because "plaintiff first noticed the alleged defects 'shortly after purchase' in 2015, reported the alleged defects to his dealership on June 11, 2015[], and did not file suit until October 17, 2018, outside the two-year statute of limitations."

"A private right of action under the GFBPA must be filed no '[m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation . . . .'" *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1291 (N.D. Ga. 2018) (quoting O.C.G.A. § 10–1–401(1)); *see also Fortson v. Best Rate Funding, Corp.*, No. 1:13-cv-4102-CC, 2014 WL 11456286, at *3 (N.D. Ga. Sept. 2, 2014), *aff'd*, 602 Fed. Appx. 479 (11th Cir. 2015). "The statute of limitations begins to run on a cause of action on the date that suit on the claim can first be successfully maintained." *Id.* (citation omitted). Plaintiffs must exercise "reasonable diligence to learn of the existence of a cause of action"; ignorance of the facts supporting a claim "does not prevent the running of the statute of limitations." *Id.* (citation omitted).

DeBarros alleges conduct by GM "that makes it unclear when [he] should have known about the alleged violation." *See Amin*, 301 F. Supp. 3d at 1291-92. Because "[i]t is not apparent on the face of the [amended complaint] when [DeBarros] knew or should have known of the alleged violation of the GFBPA," the Court will not conclude

8

on the pleadings that DeBarros' GFBPA claim is time-barred. *See Fortson*, 2014 WL 11456286, at *3.

### ii. Sufficiency of DeBarros' Allegations

The GFBPA outlaws "[u]nfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). "'A private FBPA claim has three elements: a violation of the Act, causation, and injury.'" *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1289 (N.D. Ga. 2018) (quoting *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2006)). "In addition, 'justifiable reliance is an essential element of an FBPA claim.'" *Id.* at 1289-90 (citation omitted). However, "establishment of unfair or deceptive acts or practices, within the meaning of the FPBA, does not require proof of an intentional conduct on the part of defendant." *Id.* at 1290 (citation omitted).

Because the GFBPA claim sounds in fraud, Rule 9(b) imposes a heightened pleading standard which requires DeBarros to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *14 (E.D. Mich. June 7, 2018) ("Rule 9(b) applies to state consumer protection claims 'which sounds in fraud.'"). Specifically, Rule 9(b) requires a plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). At a minimum, this requires DeBarros to "specify the 'who, what, when, where, and how' of the alleged fraud." *Id.* (citation omitted).

9

DeBarros alleges GM violated three provisions of the GFBPA, *see* O.C.G.A. §§ 10-1-393(5),(7), (9). In relevant parts, those provisions make the following practices unlawful: "(5) Representing that goods . . . have . . . characteristics, . . . uses, benefits, or quantities that they do not have"; "(7) Representing that goods . . . are of a particular standard, quality, or grade . . . if they are of another"; and "(9) Advertising goods . . . with intent not to sell them as advertised." *Id.*

GM argues that DeBarros' GFBPA claim should be dismissed because he does not allege the necessary facts under Rule 9(b); specifically, GM says DeBarros fails to allege *when* GM made the alleged misrepresentations and *where* it made them. The Court agrees.

In his response, DeBarros attempts to show he satisfies Rule 9(b) by stating:

> "With respect to the Z06, (who) GM; (what) violated O.C.G.A. § 10-1-393(5),(7), (9); (when) on or about April 24, 2015; and (how) plaintiff justifiably relied on representations in GM's marketing material that the Z06 was '[a] driver's car with no equal[,]' with special features designed to properly cool the vehicle, and that is was 'the most capable model in the []car's []history[,]" when GM knew it was not."

[ECF No. 14, PgID 200]. Contrary to his contention, DeBarros fails to properly allege when and where GM made the alleged misrepresentations.

Like his amended complaint, DeBarros' response completely overlooks the "where" of the alleged fraud; that is, he fails to address or allege facts regarding the specific communications or channel through which GM made its alleged misrepresentations.

And, although his response goes beyond the amended complaint and attempts to identify "when" GM made the misrepresentations, DeBarros merely

10

identifies April 24, 2015 – which is the date he purchased his Z06 – not the dates GM made the alleged misrepresentations.

Notably, the amended complaint is missing the dates of the alleged misrepresentations; it summarily, and inaccurately, alleges: "Plaintiff received representations regarding the quality of the Z06 before, during, and after his purchase of the Z06. The approximate dates he received these representations are set forth herein or are appended hereto as Exhibits." [ECF No. 11, PgID 120]. This does not satisfy Rule 9(b).

DeBarros also claims that GM's Service Bulletin – which a dealership provided him during a repair visit and which states that the Z06 was designed to keep the engine cool during an 86°F day – also violated the GFBPA, because it misrepresented the standard, quality, grade and characteristics of the Z06. This claim also fails.

First, similar to the other allegations, DeBarros fails to plead the "when" for this particular communication; all he alleges is that he "was referred" to the Service Bulletin "during one service visit." Moreover, as GM points out, DeBarros could not have purchased his Z06 in reliance on this post-purchase communication. Therefore, he fails to satisfy the "justifiable reliance" element of his GFBPA claim and fails to allege any injury from this alleged misrepresentation. Because DeBarros fails to sufficiently allege when he received the Service Bulletin, and because he has not alleged an injury as a result of this communication, it cannot support his GFBPA claim.

In a footnote at the end of his argument section, DeBarros says his GFBPA claim may also proceed under a theory that GM omitted the existence of defects in the Z06 at the time of sale and during repair attempts. While DeBarros is correct that a GFBPA

11

claim can proceed under a fraudulent omission/concealment theory, he does not base his GFBPA claim on fraudulent omissions and – despite given the opportunity to amend his complaint – does not allege with particularity the facts necessary to plausibly state such a claim.

DeBarros fails to allege his GFBPA claim with the particularity required by Rule 9(b). Thus, his GFBPA claim must be dismissed.

The Court GRANTS GM's motion to dismiss the GFBPA claim. Count IV is DISMISSED WITHOUT PREJUDICE.

### D. UNJUST ENRICHMENT/OPPORTUNISTIC BREACH OF CONTRACT CLAIM

GM argues that DeBarros' unjust enrichment/opportunistic breach of contract claim fails because the Warranty is an express contract governing the parties' relationship with respect to DeBarros' Z06. The Court agrees.

"While a party may plead equitable claims in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). The Warranty is an express contract that governs the subject of the dispute; GM does not contest this. DeBarros "cannot use an unjust enrichment claim to expand the terms of [the Warranty]." *See Terrill v. Electrolux Home Prod., Inc.*, 753 F. Supp. 2d 1272, 1291 (S.D. Ga. 2010).

GM's motion to dismiss DeBarros' unjust enrichment/opportunistic breach of contract claim is GRANTED; Count V is DISMISSED WITH PREJUDICE.

**V. CONCLUSION**

Consistent with the above conclusions, the Court **GRANTS IN PART** and **DENIES IN PART** GM's motion to dismiss.

The Court **DISMISSES WITHOUT PREJUDICE** DeBarros' GFBPA claim (Count IV) and **DISMISSES WITH PREJUDICE** his unjust enrichment/opportunistic breach of contract claim (Count V).

At this juncture, DeBarros may proceed on: Count I, breach of express warranty; Count II, breach of implied warranty; and Count III, violation of the MMWA.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: May 16, 2019